# CHARLES TOWN

## GREENLEE v. STEELSMITH.

Submitted February 25, 1908.     Decided September 11, 1908.

1. MINES AND MINERALS—*Mining Partnership—Advances—Liens.*
   Mining partners operating oil leases have a lien on the social
   property for advances or balance due them after payment of debts;
   but having divided the product of the business by division orders
   giving to each his share of the product in severalty and separa-
   ting it from the balance, no such lien exists on the product thus
   divided, but the lien remains valid on the social property used in
   operating the said leaseholds. (p. 363 )

2. APPEAL AND ERROR—*Review—Reversal.*
   An appellate court will not reverse a decree on the application
   of an appellant who is clearly shown by the record not to be ag-
   grieved or prejudiced by the decree complained of. (p. 366.)

Appeal from Circuit Court, Pleasants County.

Bill by Clinton D. Greenlee against Amos Steelsmith and
others. Decree for plaintiff, and defendant Butler County
National Bank appeals.

*Affirmed.*

V. B. ARCHER and MERRICK & SMITH, for appellant.
C. A. KREPS, for appellee.

MCWHORTER, JUDGE:

At the April rules, 1901, Clinton D. Greenlee filed his
bill in equity in the circuit court of Pleasants county against
Amos Steelsmith, the Butler County National Bank of Butler,
Pennsylvania, a corporation, the Pittsburg Refining Com-

pany, a corporation, Wm. N. Miller, trustee, Sadie E. Braun, the Eureka Pipe Line Company, a corporation, the Oil Well Supply Company, a corporation, and the First Nationol Bank of Marietta, Ohio, a corporation, and alleged that he was then and for some time past had been associated with said defendant Steelsmith as a mining partner in the ownership, development and operation of two certain leases for oil and gas purposes in Pleasants county—one known as "Friend Wagner" lease and the other as "T. J. Wagner" lease; that plaintiff was owner of one-half of the first mentioned lease and three-fourths undivided interest in the T. J. Wagner lease; that he and the said Steelsmith had since the date of said leases acquired their said several interests therein by sundry *mense* assignments, transfers and conveyances set out in the bill; that Steelsmith assigned and transferred to his daughter, the defendant Sadie E. Braun, all his right, title and interest in the T. J. Wagner lease, described as the one-fourth interest therein. That as a result of the various operations upon the said leasehold premises there was located upon the said Friend Wagner lease nine producing wells, producing on an average 40 or 50 barrels per day, which wells were equipped with the necessary oil well appliances to successfully operate them, and upon the T. J. Wagner lease were located five producing wells, producing on an average 16 to 20 barrels per day and likewise equipped for operating the same. That plaintiff had the sole management and control of the said operations, that the costs and expenses of putting down the wells and operations on the property had been very large; that in the beginning, after oil was found on the property and production begun, division orders were signed and filed with the pipe line company and the oil produced had since then been run to the individual credit of plaintiff and said Steelsmith, except that the oil belonging to Steelsmith, produced since about the 5th of December, 1899, upon the execution by said Steelsmith of a mortgage or deed of trust upon certain of his property which included his interest in the said Friend Wagner lease, had been run in the pipe line to the credit of the defendant, the Butler County National Bank, for the purpose of said mortgage and that since said assignment by Steelsmith of his interest in the T. J. Wagner lease to his

daughter Sadie E. Braun, the oil produced from that lease and belonging to Steelsmith's interest had been run into the pipe line to the credit of said Braun and that the Bank and Braun had from time to time disposed of the oil produced and run to their credit, and plaintiff had received no part thereof nor benefit therefrom. That on the 5th day of December 1899, said Steelsmith executed to the defendant Pittsburg Refining Company a deed, along with other property, for all his interest in the Friend Wagner lease and on the same day the Pittsburg Refining Company executed to the defendant Wm. N. Miller, trustee, a deed of trust conveying all the property deeded to it by Steelsmith in trust to secure an indebtedness of some $65,000 set out in the trust deed; and that on the 23rd of January, 1900, said Steelsmith assigned to Defendant Butler County National Bank all his right, title and interest to said deed of trust; that complainant had no personal knowledge whatever of said conveyances or the assignment of said Steelsmith of his interests in the said trust to the bank, and only recently obtained knowledge of the existence thereof, and had no knowledge of the purpose or intention of said Steelsmith, the Refining Company or the Bank in making said papers, and had only recently learned of the assignment of Steelsmith's interest in the T. J. Wagner lease to his daughter. That he always looked to Steelsmith for contributions to the expenses of the developments and operations upon the property, and that during most of the time the burden thereof had been carried by plaintiff, and for the last year or more said Steelsmith had contributed very little, except by way of giving his notes, to the operations upon the property and expenses incident thereto. That the property was then indebted to the plaintiff and others growing out of the operations up to the first of February, 1901, about $8,440.17, all representing the unpaid portion of said Steelsmith's liability incurred in the operation, plaintiff having fully paid his share of the expenses; that of said indebtedness about $3,373.09 was represented by unpaid merchandise accounts chargeable to Steelsmith, that $454.49 was represented by a note of Steelsmith dated December 24, 1900, payable to plaintiff and endorsed by him for the accommodation of Steelsmith, and $655.64 was represented

by a note given by Steelsmith in the name of the Pittsburg Refining Company, of which company he was president and manager, dated November 28, 1900, and payable to plaintiff and endorsed by him for the accommodation of Steelsmith; and $2000.00 thereof represented by another note of Steelsmith dated November 26, 1900, payable to plaintiff and endorsed by him for the accommodation of Steelsmith and which said several notes plaintiff had been obliged to take up out of the banks where they had been discounted for Steelsmith's accommodation and no part of which had ever been paid by Steelsmith; and the residue $1,957.56 was represented by a note of the Pittsburg Refining Company dated December 22, 1900, payable to plaintiff and by him endorsed for the accommodation of Steelsmith and which note remained due and unpaid and was held by the defendant the First National Bank of Marietta, Ohio, and was past due, and which notes were made and delivered by Steelsmith and by the Refining Company to cover advancements made by plaintiff on behalf of Steelsmith in said operations and to pay bills contracted in his behalf in relation thereto; that they were not accepted by plaintiff in payment of the indebtedness but were to operate as payments when actually paid by him. That in addition to the said indebtedness of $8,440.17 against the interest of Steelsmith in said leaseholds, the defendant, the Oil Well Supply Company, claimed that the interest of said Steelsmith and also of plaintiff and that plaintiff and Steelsmith were each individually liable to it upon a note executed to it by Steelsmith originally for $4,000 which had been reduced from time to time by Steelsmith to about the sum of $3,010.15 and which note was executed to said Oil Well Supply Company by Steelsmith to discharge his proportion of the indebtedness of said property to said company for oil well supplies purchased and used on the property in their operations. That by the acceptance of said note from Steelsmith in payment there was a novation of said indebtedness *pro tanto* and the said supply company thereby relieved plaintiff from the payment of so much of said indebtedness, and that neither he nor his interests were longer liable therefor, but that Steelsmith and his interests in said property were alone bound for said debt which made the amount as of the 1st of Feb-

ruary, 1901, against Steelsmith the sum of about $11,450.93; that during the time of the accumulation of said indebtedness against the interest of Steelsmith the defendant, the Butler County National Bank, had received the benefits and proceeds of the sale of the oils produced from the Friend Wagner lease and defendant Braun had received the benefits and collected the proceeds from the T. J. Wagner lease and no part thereof had gone to the costs of production and plaintiff had been obliged to carry the burden of said indebtedness except the debt due the said Oil Well Supply Company on said note. And alleged the insolvency of Steelsmith and the filing of his petition in bankruptcy and inability to pay his debts, and plaintiff was obliged to manage and control said property to protect the same and to incur and to pay the expenses of the operations thereon, and in view of the fact that said interests of Steelsmith and Braun in said leaseholds had become doubtful security to him for the said indebtedness to him and advancements by him, he was entitled to have sequestered and held in the pipe line the oil produced from said property and run to the credit of said Steelsmith or the said Braun, and subjected to the payment of said indebtedness; that he was entitled in this Court to have the business between him and Steelsmith, as said mining partners, finally wound up and settled and to have the property sold and the debt against it and the advancements made by him paid and discharged out of the interest of said Steelsmith therein. Praying that the Pipe Line Company be enjoined from delivering to Steelsmith, the Butler County National Bank, Wm. N. Miller, trustee, Sadie E. Braun or to their agents, &c., any of the oil thereafter produced and run into the pipe line to the credit of either of said parties from either of said leaseholds, and for a final settlement in this cause of the accounts between plaintiff and Steelsmith, Pittsburg Refining Company and Sadie E. Braun, pertaining to the operations and developments of said leaseholds; that he have a decree against Steelsmith, Refining Company and Braun for the advancements by him on account of the said operations on said property, and that the business of the mining partnership or partnerships be wound up and be sold and the interests of Steelsmith, Refining Company and Braun in the proceeds thereof be subjected

for the payment of said indebtedness incurred on behalf of Steelsmith's interest in said property and after the payment thereof, to the payment of the advancements made by plaintiff on account of Steelsmith and on account of Braun's interest; and that the defendants be enjoined and inhibited from in any way interfering with plaintiff in the management and operation of said property until the same should be sold and disposed of under decrees of the court; and for general relief.

The Oil Well Supply Company filed its answer setting up its claim on the 22nd of October, 1901. On the 2nd day of January, 1902, the following consent decree was entered:

"This day came Clinton D. Greenlee by W. N. Miller, his attorney and Amos Steelsmith, Sadie E. Braun and The Butler County National Bank of Butler, Pennsylvania, by V. B. Archer, their attorney and the controversy between the said complainant and the defendants Amos Steelsmith, Pittsburg Refining Company, Sadie E. Braun and the Butler County National Bank having been settled and compromised out of Court, according to an agreement in writing between the said Clinton D. Greenlee, the Pittsburg Refining Company and Sadie E. Braun, a copy of which is filed with the papers of this cause, and by which the said Clinton D. Greenlee has purchased from the said Pittsburg Refining Company and Sadie E. Braun their respective interests in the Friend Wagner lease and the Thomas J. Wagner lease in the bill mentioned, at the price of $17,-500.00 proportioned between the properties according to the production of oil as follows: $13,125.00 to the Friend Wagner lease and $4,375.00 to the Thomas J. Wagner lease, and from said several sums of purchase money there is deducted the indebtedness due from each property to the said Clinton D. Greenlee for operating expenses as per statement in writing filed in this cause as follows:

"First: From the purchase money for the said Friend Wagner lease the sum of $7,987.54, leaving a balance of purchase money due to the Pittsburg Refining Company of $5,045.34.

"Second: From the purchase money for the Thomas J. Wagner lease the sum of $1,939.62, leaving a balance

of purchase money due to the said Sadie E. Braun of $2,-435.38.

"And for which said balance of purchase money the said Clinton D. Greenlee has executed and delivered to the said Pittsburg Refining Company the note of the Greenlee Trading Company, Limited, dated December 6, 1901, payable on demand by the legal holder thereof after February 6th, 1902, with certificates for seventy shares of preferred stock of the Greenlee Oil Company, attached as collateral, and a like note of the Greenlee Trading Company Limited, to the said Sadie E. Braun dated December 6, 1901, for the balance due on the purchase money of the Thomas J. Wagner lease payable on demand after February 6th, 1902, with a certificate for thirty shares of preferred stock of the Greenlee Oil Company attached as collateral, and the said Pittsburg Refining Company and the said Sadie E. Braun have delivered to the said Clinton D. Greenlee the deeds for their several interests in the said leaseholds, by consent and agreement it is adjudged, ordered and decreed that the said sale and transfer be confirmed.

"And by like consent and agreement of the parties it is further adjudged, ordered and decreed that the injunction heretofore awarded in this cause be wholly dissolved and that the Eureka Pipe Line Company do deliver to the Butler County National Bank and the said Sadie E. Braun the oil run into the pipe line to their credit respectively, from the said Wagner leases prior to November 22, 1901, all oil run to their credit on and after that date to be delivered to said Greenlee.

"And it is further adjudged, ordered and decreed that in compliance with the contract aforesaid between the said Greenlee and the Pittsburg Refining Company and Sadie E. Braun, that the note of the Greenlee Trading Company, limited, of $5,045.34 is to be taken and held by the Butler County National Bank, or sufficient of the proceeds thereof, to cover the indebtedness claimed against the said property and against said Greenlee and the said Refining Company and the said Steelsmith amounting to $3,281.06 and interest from November 24th, 1901, until the question of the liability of the said Clinton D. Greenlee or the said property

shall be finally determined in this. cause and subject to the order of the Court .in relation thereto.

" And this cause is discontinued except as to the matter of controversy between the said plaintiff and the defendants as to the claim of the Oil Well Supply Company as set forth in its answer in this cause, and the said leaseholds are wholly released from all claim or lien of any of the parties hereto heretofore existing therein. And as to the said claim of. the Oil Well Supply Company this cause is continued for further hearing on the incoming testimony which may be taken in said issue."

Which decree was signed by the plaintiff Greenlee and the defendants, Steelsmith, Braun, Butler County National Bank and the Pittsburg Refining Company.

Depositions were taken on behalf of the plaintiff and of the defendant, the Butler County National Bank, and filed in the cause. On the 22d day of February, 1907, the cause came on to be heard and the following decree was entered.

" This cause came on this day to be heard upon the former orders and decrees, upon the consent decree entered in this cause on the 2nd day of January, 1903, upon the bill, the separate answer of Sadie E. Braun, the separate answer of Oil Well Supply Company, the separate answer of Butler County National Bank, upon general replications to said answers, upon the provisions of said consent decree and the agreement therein referred to, by which sufficient funds arising from the sale of the interest of the Pittsburg Refining Company in the property in this cause mentioned, were taken and held by the Butler County National Bank to cover the indebtedness claimed against said property and against said Greenlee and Pittsburg Refining Company, as set forth in said decree, until the question of the liability of said Greenlee or said property should be finally determined in this cause and subject to the order of the Court in relation thereto, upon the deposition of Louis Braun, taken by the Oil Well Supply Company, and the deposition of R. V. Ritts, taken by the Butler County National Bank, under the provisions of said decree, and the pleadings in this cause, and was argued by counsel. On consideration whereof, the Court is of opinion, and doth adjudge, order

and decree that the amount due and owing from the late partnership of Greenlee and Steelsmith to the said Oil Well Supply Company, including interest to this date, (February 12, 1907) is four thousand and ninety-nine and 32-100 ($4099.32) dollars, and that the said property in said consent decree referred to, as conveyed by the Pittsburg Refining Company to C. D. Greenlee, was, at the time of said sale and conveyance liable for said indebtedness as mentioned in said consent decree.

"It is therefore, further adjudged, ordered and decreed that The Butler County National Bank, (out of the proceeds of the note for Five Thousand and forty five and 34-100 ($5045.34) dollars in said consent decree mentioned,) do pay to said Oil Well Supply Company the said sum of Four Thousand and Ninety Nine and 32-100 ($4099.32) dollars with interest thereon from the 13th day of February, 1907, until paid, and the costs herein expended by said Oil Well Supply Company. And this cause being now fully determined, it is ordered to be left off the docket."

From which decree the defendant, the Butler County National Bank, appealed and assigns four several causes of error as follows:

"First: The court erred in decreeing that there was due Four Thousand and Ninety Nine Dollars, and Thirty-Two Cents from the defendant Steelsmith to the plaintiff, Greenlee.

"Second: The court erred in decreeing that there was due the Oil Well Supply Company from the partnership of Greenlee and Steelsmith, the sum of $4099.32.

"Third: The court erred in rendering a decree against the Butler County National Bank, a defendant, in favor of the Oil Well Supply Company, a co-defendant, for the sum of $4099.32, with interest.

"Fourth: The court erred in entering and rendering a decree against your petitioner, the Butler County National Bank, in favor of the Oil Well Supply Compony, for the sum of $4099.32,—as both the Oil Well Supply Company and your petitioner were defendants to the bill instituted by Clinton D. Greenlee, when, in fact, there was no cross-bill, or answer praying affirmative relief filed by the Oil Well Supply Company, against its co-defendant, your pe-

titioner,—or any issue whatever authorizing a decree against one co-defendant in favor of another.''

Appellant, by counsel, in its brief says, ''For convenience will consider these assignments practically together'' and starts out with the proposition that the Oil Well Supply Company had no standing whatever in this cause, because, he says, that at the date of the institution of this suit the plaintiff had no right to sell the leasehold premises as the property of a mining partnership, for whatever amount of advances he might have made for the benefit of Greenlee and Steelsmith for the reason that the property was no longer social assets; that at the beginning of the production of oil from the wells, division orders were signed and filed with the pipe line company and the oil produced thereafter was run to the individual credit of the parties entitled thereto, and cites *Childers* v. *Neely*, 47 W. Va. 70, (Syl. Pt. 5) where it is held:

''Partners have a lien on a social property for advances or balance due them, after the debts; but if they have divided the property or product of the business, giving each his share in severalty, and separating it from the balance, no such lien exists on the property or product so actually divided. Such is the case with 'division orders' in oil mining.''

Appellant's counsel clearly misapprehends the scope of this decision. The division orders for the separate delivery of the product of the leasehold divided nothing but the product, the equipment for its production is quite expensive and remains the property of the mining partnership and the expense of keeping the same in working order and adding to the facilities for production is very considerable and all the appliances purchased and provided for that purpose are partnership property and subject to the liens against it in favor of creditors or of the partner advancing moneys for the same, while the product itself is not subject to such lien after division orders are made. It is not contended here by appellee that he has any lien on the product which has been severed by the division orders, but upon the social property that has not been so divided. The language quoted by counsel for appellant from the opinion in the *Neely Case* from page 77 shows clearly that if there

was a mining partnership that the division orders did not divide the whole social assets, for there it is said: " Now, these partners agreed to have division orders when they began business (that is, the pipe lines to give each certificate of his share of the oil committed to them, which was a product of the wells;) and this effected a separation of that product, making each one's share his several property, and severing it from the social property, if it was such at any moment. There being no lien, there was no justification for the injunction."

The proceeding in that case was against the oil itself after orders of division which separated it from the social property. When Greenlee purchased these leasehold estates for $17,500 he did not purchase the oil in the pipes which had been severed from the social assets not divided and delivered in the pipe lines to the several parties entitled thereto, but he purchased the whole of the social assets, including the interest of those holding the division orders which carried with it the productions thereafter.

It is contended by appellant that if the leaseholds were social assets the execution by Greenlee and Steelsmith of division orders was a release of Greenlee's lien. From what has been said it is clear that his lien was only released on the product from the time that it entered the pipe lines to the credit of the different parties entitled thereto, but remained in force as to the social assets not divided.

Counsel for appellant contends that there could be no decree in favor of the Oil Well Supply Company against its co-defendant, the Butler County National Bank, without filing its answer in the nature of a cross-bill and making the bank a party thereto, upon the doctrine that to authorize a decree between co defendants there must be pleadings upon which such decree can be predicated. We are unable to see that there was any issue between the Oil Well Supply Company and the Butler County National Bank. The Supply Company had filed its claim against the mining partnership of the plaintiff and Steelsmith and the Pittsburg Refining Company. The claim was well established and, indeed, was not contested as to its validity against the partnership, but the issue, and the only

issue, was as to whether the note executed by Steelsmith originally for $4,000 to the Supply Company to discharge his proportion of the indebtedness of said property and which had been reduced from time to time to $3,010.15, had been accepted by the said Oil Well Supply Company in payment of said Steelsmith's proportion of said account or whether it was taken with the understanding that it should be applied as payment only when actually paid. At the time of the entering of the consent decree on the 2nd day of January, 1902, this was the only issue left to be adjudicated and the cause was, by said decree, discontinued except as to that matter. "And as to the said claim of the Oil Well Supply Company this cause is continued for further hearing on the incoming testimony which may be taken in said issue." It will be observed that by the provisions of said consent decree the note of the Greenlee Trading Company Limited, of $5045.34 was to be taken and held by the Butler County National Bank, or sufficient of the proceeds thereof, to cover the indebtedness claimed against the said property and against the said Greenlee and the said Refining Company and the said Steelsmith, amounting to $3281.06 and interest from November 24, 1901, until the question of the liablity of the said Clinton D. Greenlee, or the said property should be finally determined in the cause and subject to the order of the court in relation thereto.

It is true the Butler County National Bank afterwards, on the 23rd day of October, 1902, filed its answer denying many allegations of the bill and seeking to raise issues which are inconsistent with the terms of said consent decree; denying, among other things, the right of the plaintiff to have the business between himself and Steelsmith and said mining partners in the operation of said leaseholds finally wound up and settled and denied his right to have the property sold and the debts against it and the advancements paid and discharged out of the interest of Steelsmith therein. And this too after the sale had been made of the property and provision for the payment of said advancements out of the proceeds, and the sale and transfer confirmed by the said consent decree signed by the Butler County National Bank, and others. It is not competent for the Butler County National Bank or any of the parties consenting to the decree to raise an issue

for re-adjudication which was settled by the decree.    In 16
Cyc. 798 it is said: "Applying the rule against taking in-
consistent positions, parties to stipulations and agreements
entered into the course of judicial proceedings are estopped
to take positions inconsistent therewith to the prejudice, in-
jury, or disadvantage of the party or the person setting up
the estoppel." And authorities there cited.

The evidence afterwards taken on behalf of the Supply
Company established the fact clearly that the note was taken
not as payment of Steelsmith's interest but to be applied there-
to when paid, thereby holding Greenlee as well as the social
property liable for the same.

It further appears from the evidence of J. V. Ritts,
president of the Butler County National Bank, and taken
and filed in behalf of said bank that the note for $5045.34
and its interest was more than sufficient to pay the claim of
the Oil Well Supply Company, which was $3,281.06 with
interest from November 24, 1901, and the balance due the
Butler County National Bank, which, according to the testi-
mony of Ritts, remaining unpaid on the notes held by it ag-
gregating $65,000 and secured by the mortgage or trust
deed, was about the sum of $1,200 on the last unpaid note
at the time the testimony of Ritts was taken in February,
1905. So that after the payment of the claim of the Oil
Well Supply Company and all that remained due and unpaid
of the balance going to the Butler County National Bank, out
of the $5045.34 note held by it for the purpose of satisfying
the claim of the Oil Well Supply Company, when the liability
of the plaintiff and the social property should be found to
be liable therefor, there was a considerable sum left over.
The Butler County National Bank having been paid all that
was secured to it by the deed of trust or mortgage could
have no further interest in the matter, except to account
for such surplus arising from said note of $5045.34 and in-
terest to the parties entitled thereto as remained in its hands
after the payment of the claim of the Oil Well Supply Com-
pany and the balance of about $1,200 due it on account of
the deed of trust or mortgage securing the $65,000 repre-
sented by the notes aggregating such amount.    The appel-
lant fails to show that it is in any manner aggrieved by the
decree of February 22, 1907, but on the contrary shows by

its own evidence that it had been paid in full all the claims it represents and that a surplus remained in its hands after paying the Oil Well Supply Company's claim and all of its own claim. This being true, how can it maintain this appeal. "An appellate court will not reverse a decree at the instance of a party not prejudiced by it." *Handy* v. *Scott*, 26 W. Va. 710. And in *Clark* v. *Johnston*, 15 *Id.* 804, it is held: "It is not sufficient to reverse a decree, that there is error in it; the error must be prejudicial to the appellant, or it will not be reversed on his application." In *Williamson* v. *Hays*, 25 *Id.* 609, it is decided that: " To entitle any person to obtain a writ of error or appeal from a judgment he must be both a party to the case and be aggrieved by the judgment." And in *Miller* v. *Rose*, 21 *Id.* 291, it is held that: "The Court must be affirmatively satisfied that there is error in the judgment of the court below to the prejudice of the plaintiff in error before it can reverse such judgment."

Counsel for appellant discusses other questions in his brief, as do also counsel for appellees, but notice of them here is rendered unnecessary, the record showing so plainly that the money left in the hands of the appellant for the payment of the Oil Well Supply Company's claim and the claim due appellant under the deed of trust or mortgage was more than sufficient therefor.

The appellant is not in any manner prejudiced or aggrieved by the decree of February 22, 1907, and the same must be affirmed.

*Affirmed.*