(No. 26995.—Affirmed in part and modified in part.)
HARRY C. KINNE et al., Appellants, vs. DICK DUNCAN et al., Appellees.

*Opinion filed March 16, 1943—Rehearing denied May 14, 1943.*

ANDREW O. NIEHOFF, for appellants.

WEEKS, SURLES & POTTER, for appellee Dick Duncan.

McCABE, ABRAHAMS & DALY, and RUSSELL WILSON, (HARRY ABRAHAMS, of counsel,) for other appellees.

Mr. JUSTICE GUNN delivered the opinion of the court:

In March, 1940, appellee Dick Duncan became the owner of an oil lease in forty acres of land known as the Knolhoff lease. He was engaged in the business of drilling oil wells. In June, 1940, Allen Borton acquired one half of the interest of Duncan, and thereupon they entered into an agreement to develop said lease with Duncan doing the drilling. June 12, 1940, Borton assigned one half of his interest in the lease to Harry and Uella Kinne, appellants, and the other one half to Elnora Horton, his mother-in-law. July 19, 1940, Borton executed an assignment of $7500 of the oil runs from one half of his interest in the lease to the First United Finance Corporation. This assignment was later released and a like one, dated July 20, for the same amount and in lieu thereof, was executed by Harry and Uella Kinne and Elnora Horton. In August, 1940, Elnora Horton made a further assignment of oil runs on her interest to the finance corporation in the amount of $7500; and in September, 1940, the Kinnes made a fur-

ther assignment of the oil runs from their interest in the amount of $9000. In August and October, 1940, Duncan made assignments to the finance corporation of oil runs from one half of his interest totalling $25,000. The greater part of the proceeds received from the assignments made by the Kinnes and Horton was paid to Duncan to apply upon the costs of drilling wells upon the lease.

Between June and September, 1940, Duncan drilled and equipped nine wells on the lease, of which the first four were substantial producers, two were small producers, and three of them were dry. In October, 1940, Duncan filed a claim for an oil-and-gas lien under the statute, and a like lien against the interests of Kinne and Horton upon the theory their joint interest in owning and developing the oil leases constituted a mining partnership. The total of the claims for lien of Duncan amounted to $15,200.83. After Duncan filed his lien claims, appellants filed suit in the circuit court of Clinton county praying for a removal of his claims for liens as a cloud upon the interest of plaintiffs, and for an accounting, and for the appointment of a receiver. Duncan filed a counterclaim setting up a mining partnership existed between the parties, and also alleging Borton's assignments to the plaintiffs were not *bona fide;* and if, in the alternative, it should be established they were *bona fide,* in such case Borton was acting as agent for the plaintiffs in connection with the development and operation of the lease.

Upon a hearing, the court found that a mining partnership existed between the parties, and that Borton was acting as agent for the Kinnes and for Horton and had full knowledge of the manner in which Duncan was developing the oil lease, and entered a decree finding that Duncan was not entitled to an oil-and-gas lien but was entitled to a partnership lien against Elnora Horton in the amount of $3037.48 and against the Kinnes in the amount of $6537.48. It also found that the Fox Rig & Lumber Company was

entitled to a prior lien in the sum of $838.78 for materials furnished. The decree also found that the interest of appellee Duncan should be subordinated to the rights of the First United Finance Corporation until the money advanced upon the oil runs to the Kinnes and Horton had been paid.

Upon appeal to the Appellate Court for the Fourth District the decree of the circuit court was affirmed with the exception that it was held that the decree against the Kinnes, instead of being against them jointly for the sum above mentioned, should have been against them severally in the sum of $3268.74 each, and also that, instead of allowing the Fox Rig & Lumber Company an oil-and-gas lien, the amount should have been added to the partnership lien of Duncan. A more detailed statement of the facts may be found in the opinion of the Appellate Court reported in 315 Ill. App. 577. The above is sufficient for the purposes of determining the questions raised by appellants on the appeal allowed to this court.

At the outset it is contended Judge Dady had no power to deliver the opinion of the court after his term of office had expired and he had been assigned to another division of the Appellate Court. The record discloses that May 26, 1942, the Appellate Court convened with Justices Lawrence E. Stone, Ralph J. Dady and John T. Culbertson, Jr., present. June 9, 1942, an order of the Supreme Court of Illinois was filed appointing John T. Culbertson, Jr., Lawrence E. Stone and George W. Bristow justices of the Appellate Court for the Fourth District, and this new court met and organized June 22, 1942. June 27, 1942, the opinion in the case was handed down as being written by Justice Ralph J. Dady, and on the same date an order was entered by Justices Stone, Dady and Culbertson reversing the decree of the circuit court in part, and affirming the same in part, as stated in the opinion.

The statute of the State provides that two judges of the Appellate Court shall constitute a quorum, and the con-

currence of two shall be necessary to the court's decision. (Ill. Rev. Stat. 1941, chap. 37, par. 31.) The record in this case shows all three of the judges concurred in the opinion, and if it be considered that Justice Dady at the time of the handing down of the opinion was not a member of the court, his opinion, nevertheless, was concurred in by the two remaining members of the court, and the fact the opinion bore his name would be immaterial, as it appears it was concurred in by a quorum of the court, which is sufficient to give it force and validity. The case of *Waite* v. *People ex rel. Smith,* 228 Ill. 173, is not in point because in that case the court consisted of one member, and the order entered was made by the judge after his term of office had expired.

It is well established in this State that where there is an association of individuals for producing oil or minerals from property, and the expenses of development and production and sale of the oil are divided and shared according to the holdings of the members in the leasehold property, a partnership exists. In such a partnership, in the absence of a specific agreement, the ordinary rules applying to commercial partnerships do not apply. In a mining partnership each copartner has a right to sell his interest in the firm property whenever and to whomsoever he may choose. By such a sale he ceases to be a partner, and at the time he ceases to be such copartner his vendee or assignee becomes a partner in his stead with the remaining members of the firm. Such a sale does not dissolve the partnership, and the death of a member does not dissolve it. The incoming partner will not be liable for the antecedent debts of the firm as between the partners, but he takes his interest subject to the payment of antecedent partnership debts. Each member has a lien upon the partnership property for the debts due to the creditors of the partnership, which lien he may enforce in equity. *Harris* v. *Young,* 298 Ill. 319.

Appellants do not contend that a mining partnership did not exist. They claim, however, that appellants did not authorize Duncan to drill more than four wells upon the lease, and that all expenses of wells five to nine should not be charged to the interest of appellants. This was one of the controverted facts in the case.

It is also contended by appellants that, because a co-partnership existed and Duncan was the managing partner, a fiduciary relationship existed between appellants and appellee, placing the burden upon Duncan to establish by clear and unequivocal evidence the claims that he asserts against the plaintiff. In connection with this point it is asserted it was not proper under the circumstances for Duncan to make a profit in his well-drilling operations because of such fiduciary relationship. The circuit court found, and the Appellate Court affirmed it in this respect, that the sum of $10,800 be deducted from the total expenditure of Duncan as representing his profit in the well-drilling operations, and his lien against the partnership assets was reduced by this amount. Appellants say, however, that the evidence shows the profits amounted to $12,085 instead of $10,800. This is a matter of evidence that was fully examined by the trial court and affirmed by the Appellate Court. There is nothing in the record to show that either the circuit or the Appellate Court failed to apply the rule that this claim of Duncan should be established by clear and convincing evidence, and for this reason this contention of appellants cannot be sustained.

The appellants also claim Duncan lost his right to a mining-partner's lien when he and Borton and the appellants executed division orders to the Union Pipe Line Company, because it is claimed this in effect constituted a division of the property. It seems to be one of the characteristics of a mining partnership that partners have only a lien on the social property for advances or balances due to them, but if they have divided the property or the product so

that each owns his share in severalty no partnership lien may exist upon the property or product actually divided. *Greenlee* v. *Steelsmith,* 64 West Va. 353, 62 S. E. 459.

In the present case the division orders recited they were to be in effect until further notice, and until the assignments made to the finance corporation were paid. There was no absolute or permanent allocation or division of the oil from the property by this division order, but only one that was effective until further notice was given. When Duncan asserted his partnership lien against the partnership oil lease and the court appointed a receiver, the division stopped, and the proceeds of the oil so held by the receiver became the joint property of the partners, since the proceeding in court had the effect of staying the effect of the division order.

In *Harris* v. *Young,* 298 Ill. 319, where the question was discussed it is said: "Such liens on the oil itself in favor of the members only exist while it is the property of the firm. When it is separated or divided by division or sale and any part of the oil is set apart to the individual members of the firm as their distinct share or part, or such oil is sold and the proceeds divided among the individual members of the firm, no lien further exists either on the oil thus separated and divided or on the proceeds of that so sold and divided." Inasmuch as the division orders in question were not a permanent transfer, but only until the further orders of the member, or until the amount pledged had been paid, it seems clear there had been no separation or division between the partners as such, either of the oil runs or of the leasehold, so as to come within the rule of *Harris* v. *Young,* 289 Ill. 319, and the Appellate Court did not err in so holding.

It appears from the evidence that at the time the decree was entered Duncan still owed several persons for supplies entering into the construction of the wells, the amount of which was taken into consideration in figuring the amount

of his lien upon his copartners' interests. There is no provision in the decree that any moneys paid by appellants to appellee Duncan be used by the latter in discharging the debts incurred by him in developing this lease. The Appellate Court takes the position it is too late for any such creditors to file a valid oil-and-gas lien against the leases, and that the evidence shows the credit was extended to Duncan individually. If all such creditors had been parties to the proceeding every one would have been bound by such a judgment, but only one of such creditors was a party. A case may arise by which some of these creditors could bring suit against appellants and establish liability even though they could not enforce a lien under the statute. Since appellants are being required to pay this money to the appellee Duncan for the purpose of discharging the cost of developing the leases, and such creditors have not been paid, it would seem equitable that the decree should have provided such money should be disbursed under the order of the court in discharge of the obligations incurred by Duncan to the extent to which it would reach, and in this respect we believe the judgment of the Appellate Court affirming the decree was erroneous.

Neither of the parties interested in the oil lease have contested in this court the decree with respect to the First United Finance Corporation, and under the rule laid down in *Chaitlen* v. *Kaspar American State Bank,* 372 Ill. 83, the decree in this behalf will be sustained.

Other points are raised and argued by appellants to which we have given due consideration, but which are unnecessary to discuss in detail. The judgment of the Appellate Court for the Fourth District is affirmed in all respects except as herein specified, and said cause remanded to the circuit court of Clinton county with directions to enter a decree in accordance with the judgment of the Appellate Court for the Fourth District, as herein modified.

*Judgment affirmed in part and modified in part.*