G. O. CHAPMAN, d/b/a CHAPMAN PRODUCING COMPANY, Plaintiff-Appellant, v. GEORGE MILLEMON et al., Defendants-Appellees.

Fifth District   No. 75-485

Opinion filed April 7, 1977.

Brazitis, Croegaert, Bowen & Miller, of Olney (Paul A. Croegaert, of counsel), for appellant.

Robert L. Douglas, of Robinson, for appellees.

Mr. JUSTICE JONES delivered the opinion of the court:

In this appeal we consider a dispute between co-owners of the working interest of two oil and gas leases located in Lawrence County. One of the leases, the Gillespie, has 12 producing wells, and the other lease, the Benefiel, has two producing wells, or, with more precision, two sometimes producing wells. Apparently none of the wells are large producers and can be termed "strippers." The issues of the case can best be stated by a recital of the facts.

Plaintiff has been involved in several phases of the oil production business for approximately 40 years. Plaintiff personally supervised the drilling and development of the Gillespie lease in 1946. The Benefiel lease was purchased in 1954, already developed. A D. E. Burford, a resident of Missouri, acquired a three-fourths working interest in the Gillespie lease in 1954 and a one-half interest in the Benefiel lease sometime thereafter. Burford later assigned his interests in the leases to corporations which he, and, following his death, his wife, controlled.

By agreement with the Burfords the plaintiff served as the operator of the leases, receiving $800 per month for supervision and pumping of the wells. His method of handling the accounts was to forward monthly all bills representing the expenses incurred in operating the leases to Mr. Burford or to his widow after Burford's death. The Burfords would prepare a summary of the expenses, including the $800 for plaintiff's

supervision and pumping, and allocate the total in proportion to the ownership, 75% to the Burfords and 25% to plaintiff.

The arrangement with the Burfords continued until about July 1973 when, according to plaintiff, defendant, a livestock dealer from Missouri, came to Lawrence County and advised plaintiff that he was checking on the operation of the leases for Mr. Burford. Defendant then suggested that he would operate the leases for three weeks of the month and plaintiff could operate them for one week of the month. Plaintiff refused the offer because the split responsibility for operation would be unworkable. It was defendant's testimony that he was in Lawrence County several times between January 1, 1973, and July 1, 1973, and on the latter date he came to take possession of the leases for Mrs. Burford. He then told plaintiff that "there would be no more pay for him," that he, the defendant, was going to operate the leases for three weeks of the month and plaintiff could operate one week.

Between July 1973 and the end of September 1974 plaintiff continued as operator of the leases. Plaintiff and defendant arranged the allocation of the expenses of the operation on the same 75%-25% ratio that previously had appertained but the $800 for supervision and pumping paid to the plaintiff was excluded.

Defendant acquired the Burford interests in both the Gillespie and Benefiel leases by assignment dated March 20, 1974. Plaintiff continued to operate the leases until October 7, 1974, when the defendant as majority interest holder "took over." On September 6, 1974, plaintiff had filed a complaint against defendant praying for a judgment for $600 per month for defendant's proportionate part of the $800 per month for supervision and pumping of the wells for the period from July 1, 1973, to the date of decree, for a lien against the interest of defendant in the leases and for foreclosure and sale of defendant's interests in the event the judgment was not paid. The complaint also asked for appointment of a receiver for the leaseholds *pendente lite* and for an injunction which would restrain defendant from interfering with plaintiff's operation. The Marathon Oil Company, the pipeline purchaser of the oil produced from the wells, was made a party defendant to the action, but their position in the cause is that of a "stakeholder" and they are not concerned with the merits of the suit.

On February 10, 1975, plaintiff filed an amended complaint which added a count II to the original complaint. Count II alleged the takeover of operations by defendant, that defendant was incompetent in his operations and that waste had resulted to plaintiff's interest because the defendant had permitted the production from the wells to decrease. Count II further alleged that plaintiff had continued during defendant's operation to pay electric bills for the leases that defendant as operator had

failed to pay. Count II concluded with a prayer for judgment for damages by reason of the waste and the payment of the electric bills.

Defendant filed answers to both counts I and II which consisted of denials of the pertinent allegations.

Following a trial conducted by the court sitting without a jury a decree was entered which found plaintiff and defendant to be mining partners of the leases, that mining partners are not entitled to compensation for personal services rendered to the partnership unless agreed upon by all the partners, that defendant owed plaintiff for his proportionate part of operating expenses from March 1974 to date, that defendant (as the owner of three-fourths of the working interest) has the right to operate the Gillespie lease and the plaintiff and defendant have equal rights to operate the Benefiel lease, and that defendant has not incompetently operated the leases and plaintiff is not entitled to damage because of the nonoperation of certain of the wells. Plaintiff was then awarded judgment against defendant for $1,046.24, the receivership and an injunction were denied, defendant was awarded the operation of the Gillespie lease and the parties were ordered to reach an agreement on the operation of the Benefiel lease within 60 days or a receiver would be appointed by the court. Accumulated funds derived from production *pendente lite* were ordered applied to satisfaction of the judgment.

Plaintiff appeals from the decree asking from this court the relief he was denied by the trial court.

■■■ Neither party seriously challenges the trial court's finding that a mining partnership of plaintiff and the Burfords was established under the facts presented, or that the mining partnership was continued between plaintiff and defendant after defendant acquired the Burfords' interests. The record supports the trial court's finding in this regard and accordingly the differences between these parties must be resolved by application of the legal principles that pertain to that unique entity that arises when more than one person has a hand in the ownership *and* operation of oil and gas leases or other mining properties. Descriptions of a mining partnership and some of the legal obligations and rights accruing to the partners are furnished by Illinois cases. From *Harris v. Young*, 298 Ill. 319, 131 N.E. 670:

> "Where there is an association of individuals for producing oil or minerals from leasehold properties and the expenses of development and production and sale of the oil are divided or shared according to the holdings of the members of the association in the leasehold property, whether such division of expenses and profits is made with or without formal written or verbal agreement, a partnership exists. * * * In such a partnership, in the absence of a specific agreement, there is no *delectus personae* [the

right to choose one's partner] as exists in ordinary commercial partnerships. In a partnership each co-partner has the right to sell his interest in the firm property whenever and to whomever he may choose. By such a sale he ceases to be a partner, and at the same time that he ceases to be such a partner his vendee or assignee becomes a partner in his stead with the remaining members of the firm. Such a sale does not dissolve the partnership, and death of a member does not dissolve it. The incoming partner will not be liable for the antecedent debts of the firm as between the partners, but he takes his interest subject to the payment of antecedent partnership debts. Each member has a lien upon the partnership property for the debts due to the creditors of the partnership, which lien he may enforce in equity. These liens exist only against the partnership property while it is distinctly such partnership property. Such liens on the oil itself in favor of the members only exist while it is the property of the firm. When it is separated or divided by division or sale and any part of the oil is set apart to the individual members of the firm as their distinct part or share, or such oil is sold and the proceeds divided among the individual members of the firm, no lien further exists either on the oil thus separated and divided or on the proceeds of that so sold and divided." (298 Ill. 319, 325-26.)

From *Dunbar v. Olson*, 349 Ill. App. 308, 110 N.E.2d 664:

"A mere tenancy in common, or joint ownership of the property, does not make the owners partners, * * *. (Summers Oil & Gas, Perm. Ed., Vol. 4, section 723, page 150; *Tuck v. Downing*, 76 Ill. 71, 83; *Hand v. Allen*, 294 Ill. 35, 53). The owner of a so-called working interest in an oil and gas lease has a duty to share in the expense in proportion to his interest, which is consistent with his co-tenancy relationship, but he does not become a mining partner by virtue of this fact (Summers Oil & Gas, Perm. Ed., Vol. 4, section 723, page 152) Before a mining partnership exists it must be shown not only that there is a joint ownership of the property, but also a joint working and a joint operation of the lease involved, which must be shown by competent evidence (Summers Oil & Gas, Perm. Ed., Vol. 4, section 922, page 145). By joint operation is obviously meant that each of the joint owners must have some choice and participation in control and management." (349 Ill. App. 308, 311-12.)

From *Kinne v. Duncan*, 383 Ill. 110, 48 N.E.2d 375:

"It seems to be one of the characteristics of a mining partnership that partners have only a lien on the social property for advances or balances due to them, but if they have divided the property or the

product so that each owns his share in severalty no partnership lien may exist upon the property or product actually divided." (383 Ill. 110, 115-16.)

For a more detailed discussion of mining partnerships as applied to the operation of oil leases see 4 Summers, The Law of Oil and Gas, ch. 24, at 253 *et seq.* (1962).

■■ Under the facts presented by the record we find no abuse of discretion upon the part of the trial court in its refusal to appoint a receiver to operate the wells or to issue an injunction prohibiting defendant from interfering with plaintiff's operation. The cited authorities support the court's decree in this regard and we will not overturn it.

■■ Similarly, the record supports the court's refusal to render a judgment for plaintiff for damages for waste caused by defendant's allegedly improper or incompetent operation subsequent to his assumption of duties as operator. Expert opinion testimony was presented by both parties and, as might be expected, contradictory opinions were voiced. However, we agree with the trial court that the testimony from both sides was inconclusive and lacking in benchmark events to support either view. Especially is this so when the fugacious nature of oil and gas in place underground is considered, together with the fact that the operations in question here were secondary recovery by waterflood.

The principal address of plaintiff's appeal concerns the trial court's disallowance of plaintiff's claim for defendant's portion of the charge of $800 per month for supervision and pumping of the wells from July 1, 1973, until defendant assumed the operations on October 7, 1974.

It is defendant's position that plaintiff is not entitled to payment for personal services rendered to the partnership because (1) there was no agreement for payment for such services by the partners and (2) a partner is precluded from making a profit from the partnership, the only entitlement of a partner being that to a pro rata share of the partnership profits. The defendant also contends that in any event he is not liable for the portion of the claim for supervision and pumping that predated his acquisition of the Burfords' interests and becoming a partner on March 20, 1974. Defendant relies on *Kinne v. Duncan* and *Dunbar v. Olson.*

We note at the outset of our discussion that promptly upon his assumption of supervision and pumping of the wells on October 7, 1974, the defendant commenced charging plaintiff for his proportionate part of $800 a month for such services.

■■ It is true that in the absence of an agreement by all the partners a partner of a mining partnership cannot make a profit in his dealing with and performing services for the partnership. (*Kinne v. Duncan.*) On the

other hand each member of a mining partnership has a right to have the partnership property applied to the payment of the debts of the partnership due to third persons and to himself for advances made to the firm. (*Harris v. Young*; 4 Summers, The Law of Oil and Gas § 728, at 304 (1962).) The term "advance" connotes a contribution by a partner which exceeds the contributions by the other partners, but the proportionate interests in the partnership must be considered.

■■ Although the plaintiff here is precluded from reaping a profit from his services in supervision and pumping of the wells, we do not read the rule to preclude any and all compensation whatsoever. Plaintiff is entitled to compensation for any advances made to the firm. And it is readily apparent here that the plaintiff did in fact make contributions of services and labor in the supervision and pumping of the wells upon the leases that constitute an advancement to the firm. He is accordingly entitled to the worth of his services, but not to a profit. The trial court disallowed all of plaintiff's claim for supervision and pumping with a finding "That a mining partner is not entitled to compensation for personal services rendered to the partnership, unless agreed to by all partners." We disagree with this as a statement of the law where the personal services constitute an advancement to the partnership. The evidence clearly established that plaintiff did all the supervision. Rather than hire a man to pump the wells plaintiff performed the pumping services largely by himself. Absent such services by the plaintiff it would have been necessary to hire a pumper in order to maintain production and preserve the value of the leases. Plaintiff is accordingly entitled to recompense for the value of the pumping services rendered by him, but not to a profit on those services. On the occasions when plaintiff did hire another to do the pumping (according to plaintiff, about 10% of the time) he made payment therefor from the $800 monthly charge. As to this expense there can be no question that it constituted an advance by plaintiff.

■■ All supervision and pumping services were rendered by plaintiff while he was the owner of only a one-fourth interest in the Gillespie lease, with 12 wells, and a one-half interest in the Benefiel lease, with two wells. To deny plaintiff any compensation for the very substantial contribution to operation of the partnership property upon the basis that compensation for all plaintiff's services were a profit to him would work a severe inequity upon him, ignore basic tenets of the marketplace and bestow an undeserved windfall upon the defendant. Although defendant was the owner of the majority interest in the property and was a partner, his contributions during the period in question were minimal.

This same approach was taken in *Kinne v. Duncan*, cited by both parties. There Duncan, a driller, filed a claim for a statutory oil and gas

lien and also a partnership lien against co-owners of the working interest in an oil and gas lease. The total amount claimed by Duncan was $15,200.83. The co-owners filed suit to remove the claims as a cloud on title. Following a hearing the trial court found that a mining partnership existed and further found that of the $15,200.83, $10,800 was profit and deducted it from the claim. The disallowance of the "profit" portion of the claim was affirmed by both the appellate and the supreme courts. The statutory oil and gas lien was disallowed as inapplicable between partners of a mining partnership but the court attached a partners lien or equitable lien to the interests of the other partners for the advance by Duncan which consisted of that portion of his claim that was not profit.

■■ As to the plaintiff's claim for payments advanced to Norris Electric Co-op for electric power to run the pumps there is no dispute. Plaintiff is clearly entitled to have the entire sum treated as an advance and to receive defendant's proportionate recompense therefor. The trial court gave plaintiff a judgment for $1,046.24. While it is not clear what the basis of the judgment was it is apparent that the advancement for the electric bills was the principal part.

■■ A portion of the debt claimed by the plaintiff accrued prior to the defendant's acquisition of ownership in the leases and he denies any liability therefor. We agree that he incurred no personal liability for the advancements by the plaintiff prior to his acquisition of ownership (*Harris v. Young*) but, nevertheless, the interests in the partnership property which defendant acquired by the assignment of March 20, 1974, must be available to plaintiff for recovery of the amount found to be due him. Professor Summer states:

> "Each member of a mining partnership is personally liable upon all partnership obligations arising out of contract or tort. One who purchases an interest in a mining partnership takes such interest subject to the liens existing in favor of the partners for debts due the creditors of the partnership, or advances made to the partnership, but he is not personally liable for existing partnership indebtedness, in the absence of an express or implied agreement to assume it." (4 Summers, The Law of Oil and Gas § 727, at 302 (1962).)

And in *Kinne v. Duncan* it was stated:

> "The incoming partner will not be liable for the antecedent debts of the firm as between the partners, but he takes his interest subject to the payment of antecedent partnership debts. Each member has a lien upon the partnership property for the debts due to the creditors of the partnership, which lien he may enforce in equity. *Harris v. Young*, 298 Ill. 319." (338 Ill. 110, 114.)

Thus, the defendant, the incoming partner, takes the partnership property

as he finds it. To paraphrase Summers, defendant took the interests of the Burfords subject to the lien of the plaintiff for advances to the partnership. Defendant is not thereby rendered personally liable for the portion of the advance to be borne by the interest he acquired. However, that interest may be reached by the plaintiff to satisfy his claim—it is subject to the partnership lien, or an equitable lien. Defendant resists imposition of the lien from a poor posture. He had full knowledge of the claim which fathered it before he acquired the Burfords' interests. He was aware of the services plaintiff continued to render to the partnership in and about the supervision and pumping of the wells. It was defendant himself who told plaintiff "no more pay" and then, upon his assumption of the duties of operator of the leases, proceeded to assert the same charges he denied to the plaintiff. Under these circumstances we have no hesitation in finding plaintiff entitled to a partnership or equitable lien in defendant's interest in the leases.

The decree of the trial court is affirmed insofar as it denies a receivership and injunction and denies plaintiff damages for incompetent or inefficient operation by defendant. The decree is reversed insofar as it denies plaintiff compensation for the worth of his services rendered to the partnership for supervision and pumping of the leases for the period in question, and the cause is remanded to the trial court to determine the value of plaintiff's services and supervision and pumping the leases, but without the allowance of a profit. The value of such services thus determined shall be considered an advancement to the partnership by the plaintiff and the liability therefor shall be allocated between the partners proportionate to their ownership in the leases.

Affirmed in part, reversed in part and remanded.

EBERSPACHER and KARNS, JJ., concur.