375 S.E.2d 198

**Charles M. HATCHER, Jr.**

v.

**Luigi NARCISE, Annice Narcise, et al.**

**SECURITY BANK OF HUNTINGTON**

v.

**Charles M. HATCHER, Jr.
and Wayne T. Luff.**

No. 18011.

Supreme Court of Appeals of
West Virginia.

Nov. 17, 1988.

---

Lafe C. Chafin, Barrett, Chafin, Lowry & Hampton, Huntington, for Luigi Narcise, Annice Narcise.

Robert K. Means, Huntington, for Charles M. Hatcher, Jr.

Michael J. Farrell, Jenkins, Fenstermaker, Krieger, Kayes & Farrell, Huntington, for Security Bank of Huntington.

**PER CURIAM:**

This is an appeal by Luigi Narcise and Annice Narcise from a summary judgment order entered by the Circuit Court of Cabell County in two consolidated cases. On appeal the appellants contend that at the time of entry of summary judgment there were questions of material fact in the case and that the circuit court erred in entering summary judgment and in precluding them from introducing evidence on the facts which they contend were in question. After reviewing the record, this Court believes that the appellants's assertions are generally without merit. The Court believes, however, that there is a question as to whether the appellants are entitled to a set-off.

By deed dated August 28, 1980, Charles M. Hatcher, Jr. and Wayne T. Luff, as tenants in common, acquired a parcel of real estate located in Cabell County, West Virginia. Subsequently, by deed dated October 21, 1985, Wayne T. Luff and Linda L. Luff, his wife, conveyed Wayne T. Luff's one-half interest in the property to the appellants, Luigi Narcise and Annice Narcise. In consideration for the transfer the Narcises agreed to assume and pay the unpaid balances due on certain notes payable to Patricia Ray and E. Garland Ray and the Security Bank of Huntington, West Virginia.

According to the appellee, Charles M. Hatcher, Jr., subsequent to the Narcise acquisition of an interest in the property, he and the Narcises had serious disagree-

ments as to the use of the property, and the Narcises failed to make the payments on the notes to Garlands and the Security Bank of Huntington. For this reason he instituted a civil action against the Narcises and against the Luffs in which he prayed that the real estate be partitioned by sale, that the debts be paid off, and that the residual proceeds be distributed equally between himself and the Narcises.

Subsequently the Security Bank of Huntington brought an action against Wayne T. Luff and Charles M. Hatcher, Jr., alleging they were in default on the notes to the bank and praying that judgment be rendered against them. That case, since it involved the notes involved in the Narcise case, was considered in conjunction with the Narcise case.

On August 28, 1986, Charles M. Hatcher, Jr. filed a motion for summary judgment. In support of that motion he filed an affidavit in which he indicated that the Narcises had agreed to assume and make payments on the notes and that the payments had not been made. He further stated that he had paid $7,702.52 on the Narcises' note obligations and that he had had to pay utilities, insurance, and taxes to preserve the property. Up to and including the 11th day of September, 1986, he had paid $14,757.97 and $320.94 per month thereafter for the property.

Along with the affidavit Mr. Hatcher submitted a deposition of Luigi Narcise. In that deposition Mr. Narcise admitted that he had assumed the obligations of Wayne T. Luff to the Rays and the Security Bank for the purchase of the property. When asked whether he, to the date of the taking of the deposition, had paid anything at all on the notes, he indicated that he and his wife had not. When asked whether Charles M. Hatcher, Jr. had sent him records, checks, or other papers relating to the expenses for the maintenance and operation of the building, Mr. Narcise replied:

I received something from Hatcher. It was—give me just a few moments to find it—insurance policies. Charlie drew up checks that he had sent to us, but I have not gone through them, because until we

got something resolved, this really meant nothing to us.

Mr. Narcise also testified that it would be difficult, if not impossible, to partition the property in question in kind. When asked whether his interest would be promoted by selling the building, he indicated that he thought it would. He also stated that he had no objection whatsoever to selling the building. Additionally, he pointed out that Charles M. Hatcher, Jr. had and was occupying the most valuable portion of the building and that he had not accounted for or paid rent for that portion of the building. He indicated that he felt he was entitled to an accounting and a set-off for Mr. Hatcher's use of the property.

In opposition to Mr. Hatcher's motion, the Narcises filed an affidavit in which they indicated that Mr. Hatcher had failed to supply documentation of the expenses which he had incurred and in which they alleged that they had not been given an opportunity to interrogate Mr. Hatcher as to the appropriateness of the expenditures. They claimed that Mr. Hatcher had occupied and used the property in question for his law offices and that they were entitled to set-offs for his use of the property.

After taking Mr. Hatcher's motion and the exhibits relating to the motion under consideration, the Circuit Court of Cabell County, on January 13, 1987, filed an opinion. In that opinion the court stated that Mr. Hatcher was entitled to judgment as a matter of law on the issue of the liability of the appellants, the Narcises. The court also concluded that Mr. Hatcher was entitled to judgment against the Narcises for $13,904.08. The court stated that upon sale of the real estate, and prior to distribution of the proceeds of the sale, the court would conduct an inquiry as to damages, if any, that Mr. Hatcher might suffer between September 16, 1986, and the date of the sale. The court ruled that the property was not conveniently or equitably partitionable in kind and directed that it should be sold by a special commissioner. Subsequently, on April 9, 1987, the court entered an order implementing the decision set

forth in the opinion. It is from that order that the appellants now appeal.

■ The basic rule in this State relating to summary judgment is set forth in syllabus point 4 of *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963), as follows:

> If there is no genuine issue as to any material fact summary judgment should be granted but such judgment must be denied if there is a genuine issue as to a material fact.

In the present proceeding, Mr. Hatcher introduced evidence indicating that he owned a one-half interest in the property in question and that Mr. Narcise and his wife owned the other half and that the Narcises had agreed to assume one-half the obligations incurred for the purchase of the property. Mr. Narcise, in his deposition, admitted that he and his wife owned one-half, with the other half being owned by Mr. Hatcher. He also admitted that he had assumed Mr. Luff's part of the obligations incurred for purchase of the building. He admitted that he had made no payment on the obligations which he had assumed. Mr. Hatcher alleged that the property was not subject to partition. Mr. Narcise, in his deposition, indicated that it would be difficult, if not impossible, to partition the property and that he had no objection to the partition sale of the property. Mr. Hatcher alleged that he had incurred certain specified expenses in conjunction with maintaining the loans, as well as the property itself. He itemized those expenses. Mr. Narcise, in the course of giving his deposition, admitted that he had received certain checks and documents from Mr. Hatcher, but indicated that he had not looked at them. In his later affidavit, however, he indicated that Mr. Hatcher had failed to supply documentation of his expenses.

This Court believes that a fair reading of the evidence in this case shows that there is no question of material fact as to the Narcises assumption of the Luffs' obligations with respect to the purchase of the property in question; that the Narcises did not make payments on those obligations;

and that Mr. Hatcher did make payments. Mr. Hatcher also paid expenses for the maintenance of the property. Mr. Hatcher detailed the amounts spent, and Mr. Narcise did not specifically challenge Mr. Hatcher's assertions, but indicated that he had not looked at the papers sent to him by Mr. Hatcher. The Court believes that on none of these points is there really any genuine issue as to fact.

The Narcises' principal assertion is that they are entitled to a set-off against Mr. Hatcher for rent for his use of valuable portions of the premises. They assert that they have not received that rent and that Mr. Hatcher has not accounted for his use of the premises.

■ At common law one tenant in common using the common land exclusively, but not ousting or excluding his cotenant, was not chargeable for his use and occupation of the property. This rule, however has been modified in West Virginia by the adoption of *W.Va.Code*, 55–8–13. *See Smith v. Smith*, 77 W.Va. 260, 87 S.E. 355 (1915); *Ward v. Ward's Heirs*, 40 W.Va. 611, 21 S.E. 746 (1895). *West Virginia Code*, 55–8–13, provides:

> An action of account may be maintained against the personal representative of any guardian or receiver; and also by one joint tenant, tenant in common, or coparcener or his personal representative against the other, or against the personal representative of the other, for receiving more than his just share or proportion.

Under this provision, and the cases decided under it, the Narcises potentially have a set-off against Mr. Hatcher for his use of the jointly owned premises.

The Court notes that the trial court indicated that it would conduct an inquiry as to damages which Mr. Hatcher suffered between September 16, 1986, and the date of sale. At such an inquiry it is appropriate that the court permit the parties to introduce evidence on the question of whether the Narcises are entitled to the set-off which they claim.

After examining the record in this case, this Court concludes that there is no genu-

ine issue as to any material fact relating to the propriety of the partition sale or the sums due to Mr. Hatcher for his payments of the Narcises' note obligations and his payments for the maintenance of the common property. On these points the trial court properly granted summary judgment. The Court does believe, however, as explained above, that the Narcises should be entitled to present evidence on their possible set-off against Mr. Hatcher. Insofar as the trial court's summary judgment precluded them from doing this, it was erroneous.

For the reasons stated, the judgment of the Circuit Court of Cabell County directing partition of the property in question and directing that Mr. Hatcher be compensated for payments made is affirmed. Insofar as it precludes the Narcises from presenting evidence on their set-off, it is reversed, and this case is remanded with directions that they be afforded an opportunity to present such evidence.

AFFIRMED IN PART; REVERSED IN PART; REMANDED WITH DIRECTIONS.