632 S.E.2d 52

Christine McCONAHA, Individually and in Her Capacity as Administratrix of the Estate of James Vinton Slater and Mabel Florence Slater, Plaintiff Below, Appellant

v.

Ethel Isabelle RUST, Janet Evene Burdette, Marvin Darrell Slater, Jesse Edward Slater, Jesse Edward Slater, Jr., Roberta I. Kintz, Samuel Webster Harrison, Jr., and George Harrison, Defendants Below, Appellees.

No. 32726.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 25, 2006.

Decided March 2, 2006.

John H. Tinney, James K. Tinney, The Tinney Law Firm, P.L.L.C., Charleston, for the Appellant.

Kevin Wayne Hughart, Sissonville, for the Appellees, Jesse Edward Slater and Jesse Edward Slater, Jr.

C. Page Hamrick, III, Charleston, for the Appellee, Samuel Webster Harrison, Jr.

ALBRIGHT, Justice:

In this proceeding, Christine McConaha (hereinafter "Appellant") appeals the November 16, 2004, final order of the Circuit Court of Kanawha County effecting the partition of three parcels of real property owned by Appellant's father at his death, subject to the dower interest of his surviving wife, Appellant's mother. The dower interest was subsequently extinguished by the wife's death and is not relevant to this appeal.

The three parcels passed by intestate succession to Appellant and her siblings, as tenants in common, leading in time to this action to partition the properties. The order appealed from reflects the lower court's decision to partition the property in kind based on the conclusions that three of the heirs had transferred their interests in the property to another heir, one of the heirs owned five-sevenths of the undivided property subject to the exclusion of two acres for another of the heirs and the agreement that the remaining two heirs receive certain portions of the property as their proper share. Appellant contends the lower court erred by: (1) finding that three heirs had transferred their shares of the property to a cotenant, (2) ruling that a specific portion of an undivided property interest could be conveyed by quit-claim deed or other agreement; and (3) failing to account for rents owed to the coten-

ants by fellow cotenants who were using more than their share of the common property.[1] Upon due consideration of the briefs and argument, the record below and the relevant legal principles, we affirm the lower court decision.

## I. Factual and Procedural Background

James Vinton Slater died intestate on January 30, 1962, survived by his wife, Mabel Florence Slater, and seven children, namely, Christine McConaha, Ethel Isabelle Rust, Janet Evene Burdette, Marvin Darrell Slater, Jesse Edward Slater, Sr., Roberta I. Kintz and Elvin D. Slater. At the time of his death, James Vinton owned three parcels of real estate totaling approximately 55.18[2] acres, which through intestate succession became by equal shares the property of his seven children, subject to the dower interest of his widow. Mrs. Slater lived with her son Elvin on the land until she died on October 16, 1992. Mrs. Slater's death extinguished her interest in the land. Elvin Slater died on March 5, 1997.

On September 29, 1999, Appellant, individually and in her capacity as administratrix of the estates of both her father and mother, filed suit against the five living siblings and Samuel Webster Harrison, Jr., the adopted son and sole heir at law of Elvin Slater, seeking partition of the land by sale or in kind. The complaint further requested an accounting of the fair rental value of the real estate and the value of any property removed from the land by Jesse Edward Slater, Sr., and Samuel Webster Harrison, Jr., who resided on the land. Finally, Appellant named Jesse Edward Slater, Jr.,[3] and George Harrison[4] defendants as tenants by sufferance on the subject real estate without ownership interest in the property in an attempt to obtain an accounting of the lost rental value for their use of the property.

---

1. As part of her appeal to this Court, Appellant had initially sought partition by sale as the remedy for resolving the division of property dispute. This request was withdrawn as premature during oral argument by Appellant's counsel.

2. One parcel was approximated to be an acre, a second lot consisted of roughly 17.18 acres and

the largest parcel was about 37 acres. In addition to these surface interests, a one-half mineral interest had been retained in each of the parcels.

3. Son of Jesse Edward Slater, Sr.

4. Brother of Samuel Webster Harrison, Jr.

The court below referred the case to a special commissioner to determine the state of the legal interests in the real estate. The commissioner held a hearing and received testimony and other evidence before issuing his report dated February 13, 2004. The commissioner considered three documents referred to as "Bills of Sale" which purported to convey the interests of Marvin Slater, Ethel Rust and her spouse, and Janet Burdette and her spouse to Elvin Slater in exchange for various sums of money. The bills of sale were recorded [5] on February 12, 2002, after the partition suit was filed. The commissioner also considered the appraisal of Elvin Slater's estate in which it was indicated that Elvin Slater owned an undivided one-seventh interest in his father's estate and listed Samuel Harrison, Jr., as his heir at law, as well as a February 21, 2002, quitclaim deed executed by Samuel Harrison conveying to the elder Jesse Slater Mr. Harrison's interest in the subject property except for two acres of land around structures on the property, which Mr. Harrison reserved for himself. The quitclaim deed was recorded on February 27, 2002. Based on the examination of these matters, the commissioner concluded that the bills of sale did not serve to transfer to Elvin Slater the interests of the three siblings in the property and that each of the siblings and Samuel Harrison, as Elvin Slater's heir at law, had a one-seventh interest in the property.[6] The commissioner further concluded that the quitclaim deed from Samuel Harrison to Jesse Slater, Sr., was void because "[t]he holder of an undivided interest can only convey the undivided interest and cannot exempt and reserve a portion thereof."

Objections were raised to the report of the special commissioner for which the lower court convened hearings. During these proceedings, testimony was received from Appellant, Mrs. Rust, Mrs. Burdette, Marvin Slater, Jesse Slater, Sr.,[7] and Samuel Harrison, Jr. Among the exhibits admitted into evidence at the hearings were the bills of sale, property tax receipts, the appraisement of Elvin Slater's estate, and the quitclaim deed of Samuel Harrison. Based upon this evidence and agreement of the parties, the lower court concluded: (1) the seven siblings each inherited a one-seventh interest in the subject property; (2) Mrs. Rust, Mrs. Burdette and Marvin Slater transferred their interests in the property to Elvin Slater; (3) Elvin Slater had entered into an agreement with Jesse Slater, Sr., to exchange his four-sevenths interest in the real estate for construction of a house and outbuildings on a portion of the land but excepting the structures and two acres surrounding the structures from the transfer; (4) Samuel Harrison's undivided interest in the real estate as Elvin Slater's sole heir at law was reduced by his father's agreement with his brother, Jesse Slater, Sr.; and (5) the property was conducive to partition in kind. By agreement before the court among all cotenants present at the hearing, Appellant accepted as her one-seventh share of the property a ten acre segment which she had formerly graded in preparation for construction of a house. These findings were contained in the final order entered by the lower court on November 16, 2004. It is from this final order that Appellant seeks relief from this Court.

## II. Standard of Review

The order from which this appeal was taken stemmed from a hearing on the objections to the report of a special commissioner at which the lower court received testimony and allowed the introduction of other evidence. In the past we have construed such proceedings as a bench trial with the resulting order being treated on review as a judgment entered in a bench trial. *Ark Land Co. v. Harper*, 215 W.Va. 331, 334 n. 4, 599 S.E.2d 754, 757 n. 4. As we indicated in syllabus point one of *Public Citizen, Inc. v.*

---

5. As reflected in the commissioner's report, Janet Burdette's bill of sale was improperly recorded because it was not notarized.

6. After finding the transfer of ownership by the three siblings ineffective, the commissioner also recommended that to avoid unjust enrichment the siblings should reimburse the estate of Elvin

Slater with the amount of money they each received in the transactions if the property was ever sold.

7. Roberta Kintz lives in New York and was the only living sibling who did not attend any of the proceedings or offer testimony.

*First National Bank in Fairmont,* 198 W.Va. 329, 480 S.E.2d 538 (1996), appellate oversight of the findings and conclusions of the circuit court made after a bench trial entails a two-pronged deferential standard of review. "The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review." These standards will guide us to the extent that we are not otherwise precluded from reaching the issues raised.

### III. Discussion

■ The first two concerns raised by Appellant involve the lower court's recognition of the bills of sale as effective means of transferring property interests and the court's determination that either the quit-claim deed or the alleged agreement on which it was based could serve to convey a distinct portion of land held in common. While these matters raise valid legal questions, we find that Appellant lacks standing to assert them.

■ We summarized the three elements establishing standing in *Guido v. Guido,* 202 W.Va. 198, 503 S.E.2d 511 (1998), in the following way:

First, the party must have suffered an "injury-in-fact"—an invasion of a legally protected interest. Second, there must be a causal connection between the injury and the conduct forming the basis of action. Third, it must be likely that the injury will be redressed through a favorable decision of the court.

*Id.* at 202, 503 S.E.2d at 515. *See also Coleman v. Sopher,* 194 W.Va. 90, 95–96 n. 6, 459 S.E.2d 367, 372–73 n. 6 (1995). During its history this Court has repeatedly emphasized that a person appealing a decision of the lower court must be a party who is injured by the ruling. As early as 1885 we held in syllabus point one of *Williamson v. Hays,* 25 W.Va. 609, that "[t]o entitle any person to obtain a writ of error or appeal from a judgment, he must be both a party to the case and be aggrieved by the judgment." *See also* Syl. Pt. 10, *Dunn's Ex'rs v. Renick,*

40 W.Va. 349, 22 S.E. 66 (1895) ("No one can correct, either by bill of review or appeal or writ of error, an error not aggrieving him."); Syl. Pt. 2, *Greenlee v. Steelsmith,* 64 W.Va. 353, 62 S.E. 459 (1908) ("An appellate court will not reverse a decree on the application of an appellant who is clearly shown by the record not to be aggrieved or prejudiced by the decree claimed of."); Syl. Pt. 3, *John v. Turner,* 121 W.Va. 447, 6 S.E.2d 480 (1939) ("One cannot appeal to this Court from a decree which does not prejudice him.").

We fail to see how Appellant individually sustained any injury or was aggrieved by the rulings involving the bills of sale or the quit-claim deed. Appellant was one of seven heirs to the property in question. The lower court deemed that by intestate succession Appellant had a one-seventh property interest in the land. Regardless of how the lower court disposed of the issues affecting the bills of sale or the quitclaim deed, it would not affect the uncontested ruling that Appellant inherited and owned a one-seventh undivided interest in the real estate. The heirs who executed the bills of sale could have validly complained about the adverse effects of the rulings regarding their lost interests, but they chose not to do so.

■ Appellant contends that her obligation to bring this appeal is founded on her fiduciary duty as administratrix of the estate. Indeed, we expressly recognized the fiduciary duty of a personal representative of an estate in syllabus point one of *Latimer v. Mechling,* 171 W.Va. 729, 301 S.E.2d 819 (1983) ("The personal representative of the estate of a deceased acts in a fiduciary capacity. His duty is to manage the estate under his control to the advantage of those interested in it and to act on their behalf."). Even so, this Court had previously recognized that this duty is not without boundaries. As we stated in *Tyler v. Reynolds,* 121 W.Va. 475, 7 S.E.2d 22 (1939):

We hold that the right of a personal representative to prosecute litigation, with regard to the estate in his charge, must be limited to those matters which affect the estate as a whole, necessarily excluding the rights of those who may be individually

interested through distribution of the estate or otherwise; the rights of heirs or devisees flowing from the estate, and which accrue to them completely after the estate is settled, should be asserted and protected by them individually.

*Id.* at 477, 7 S.E.2d at 23. Consequently, rights which do not affect the estate as a whole do not require the protection of Appellant in her capacity of administratrix. In this case, the rights of the heirs whose property interests were affected by the bills of sale and the quitclaim deed were individual rights not accruing to the estate and for which Appellant as administratrix was under no duty to protect.

Appellant's more viable challenge to the lower court's order is the claim that the circuit court erred by failing to account for rents owed to the cotenants by other cotenants who were using the whole, or more than their fair share, of the common property.[8]

■■■ At common law, one tenant in common who exclusively used the common land while not ousting or excluding a cotenant was not chargeable for use and occupation of the property. However, the Legislature modified the common law rule. *See Hatcher v. Narcise*, 180 W.Va. 20, 375 S.E.2d 198 (1988); *Ward v. Ward's Heirs*, 40 W.Va. 611, 21 S.E. 746 (1895). Under the provisions of West Virginia Code § 55–8–13 (1923) (Repl. Vol. 2000),

[a]n action of account may be maintained against the personal representative of any guardian or receiver; and also by one joint tenant, tenant in common, or coparcener or his personal representative against the other, or against the personal representative of the other, for receiving more than his just share or proportion.

In applying the provisions of this statute,[9] we announced in syllabus points four and five of *Cecil v. Clark*, 47 W.Va. 402, 35 S.E. 11 (1900), the following general principles a

court should use to determine when an award of rents and profits is warranted:

4. If one tenant in common use the common land, and exclude his co-tenant, he is accountable to such co-tenant, though he does not take beyond his just share of rents and profits.

5. If a tenant in common use the land for purposes allowable by law to a tenant in common, but use no more than his share, and do[sic] not exclude a co-tenant, he is not accountable to him for rents and profits.

*Id.* Thus, the party seeking an award for rents and profits not only would have to produce evidence that the cotenant using the land occupied and used more than his or her just share of the property or precluded the party seeking the award from use of the land, but also would have to prove the value of rents and profits and the amount the cotenant using the land exceeded his or her just share of the rents and profits. After careful examination of the record, we find that although Appellant testified that she was ousted from the property by the elder Jesse Slater, she presented no evidence regarding the value of the property, the gross amount of rents and profits subject to disbursement or the excess rents and profits the elder Jessie Slater obtained beyond his just proportion or share. Since no evidence was offered to support the claim, we find that the lower court committed no error when in the final order it failed to address the claim Appellant raised regarding an accounting for rents from her cotenant brother. We additionally note that Appellant raised no objection to this omission at the time the court below announced its decision nor after the final order was published, thus the matter was not preserved for appeal. Our authority to resolve assignments of nonjurisdictional errors is limited "to a consideration of those matters passed upon by the court below and fairly arising upon the portions of the record designated for appellate review." Syl. Pt. 6,

---

8. The lower court's ruling dismissing the claim seeking an accounting for the compensation of lost rental value for use of the subject property by Jesse Edward Slater, Jr., and George Harrison is not challenged in this appeal.

9. The statute in effect at the time *Cecil v. Clark* was decided is essentially the same as that which we have before us today. Any differences in language are of no moment to the instant appeal. *See* W.Va.Code, ch. 100, § 14 (1868).

in part, *Parker v. Knowlton Const. Co., Inc.*, 158 W.Va. 314, 210 S.E.2d 918 (1975).

Appellant by counsel now argues that she failed to pursue the claim for an action of account because she believed that rents were significantly reduced by the lower court's finding that Jesse Slater, Sr., owned a five-sevenths interest in the property. Following this line of thinking, the issue of rents would become extraneous because no change in the division of interests in the property will result from this appeal because we have concluded Appellant is without standing to challenge that issue.

 We find it important to stress that the lower court's final order reflected an agreement which was reached between the parties during the court hearing regarding the objections to the special commissioner's report. Appellant was entitled to receive from the partitioned parcels a share of land which constituted one-seventh of the composite value of the land being partitioned. Appellant, with the advice of competent counsel, informed the lower court that, without an appraisal being performed, she would accept as her one-seventh interest in the real estate a ten-acre parcel of land proposed to be allotted to her, on which she had cleared a site to build a house. In making this representation to the court, it is fairly and readily apparent that Appellant agreed that the ten-acre tract she chose provided her at a minimum with at least one-seventh of the combined value of the three parcels of real estate.

Notwithstanding that representation, Appellant's counsel now implies that Appellant was coerced by the court below to reach this settlement agreement. We simply do not find from our review of the colloquy at the hearing that the lower court inappropriately cajoled Appellant through questioning or other method to settle the case. On the record and with the advice of counsel Appellant affirmatively and without reservation stated her decision regarding the section of the property she believed was representative of her one-seventh interest of the whole. Hence we see no reason for this Court to stray in this case from the timeworn precept generally applicable to settlement agreements that "[w]here parties have made a settlement . . ., such settlement is conclusive upon the parties thereto as to the correctness thereof in the absence of accident, mistake or fraud in making the same." Syl. Pt. 1, in part, *Calwell v. Caperton's Adm'rs.*, 27 W.Va. 397 (1886). Accordingly, we hold that this Court when reviewing an action in partition generally will not disturb a settlement agreement reached before and/or ratified by the circuit court where the party seeking relief was represented by counsel and freely entered into the agreement. As with any other settlement agreement, in order to wage a successful challenge to enforcement of an agreement reached in a partition proceeding, the party seeking to challenge such agreement must allege and prove by clear and convincing evidence that an accident, mistake or fraud occurred. *Id.* Syl. Pt. 3.

## IV. Conclusion

Finding no reversible error based on the foregoing discussion, we affirm the judgment of the Circuit Court of Kanawha County.

Affirmed.