IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2017 Term

_____

No. 16-0068

_____

FILED

April 27, 2017

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

WILLIAM G. ERPS,
Defendant Below, Petitioner

v.

LESLIE MEADOWS,
Plaintiff Below, Respondent

_____

Appeal from the Circuit Court of Mercer County
The Honorable William J. Sadler, Judge
Civil Action No. 13-C-442-WS

AFFIRMED, IN PART; REVERSED IN PART; AND REMANDED
WITH INSTRUCTIONS

_____

Submitted: January 18, 2017
Filed: April 27, 2017

Anthony R. Veneri, Esq.                    William S. Winfrey, II
Veneri Law Offices                         Attorney at Law
Princeton, West Virginia                   Princeton, West Virginia
Counsel for the Petitioner                 Counsel for the Respondent

JUSTICE WALKER delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.     "'In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review.' Syl. Pt. 1, *Public Citizen, Inc. v. First Natl. Bank in Fairmont*, 198 W.Va. 329, 480 S.E.2d 538 (1996)." Syllabus Point 1, *McConaha v. Rust*, 219 W. Va. 112, 632 S.E.2d 52 (2006).

2.     "When the finding of a trial court in a case tried by it in lieu of a jury is against the preponderance of the evidence, is not supported by the evidence, or is plainly wrong, such finding will be reversed and set aside by this Court upon appellate review.' Point 4, Syllabus, *Smith v. Godby*, 154 W. Va. 190, 174 S. E.2d 165 (1970)." Syllabus Point 5, *In re Boso*, 160 W. Va. 38, 231 S.E.2d 715 (1977).

WALKER, Justice:

Petitioner William Erps appeals a December 29, 2015 Amended Judgment Order of the Circuit Court of Mercer County awarding judgment to Respondent Leslie Meadows in the amount of $85,675 following a bench trial. Below, Meadows claimed that Erps owed her money from several separate real estate projects that she shared with him. Erps alleges on appeal that certain findings of fact made by the circuit court were clearly erroneous based upon the evidence presented at trial, and that the circuit court abused its discretion in awarding judgment against him. Meadows raises cross-assignments of error alleging that the amount of the circuit court's judgment was inadequate based upon the evidence presented. Upon consideration of the parties' briefs and arguments, the submitted record and pertinent authorities, we affirm in part, and reverse in part, the circuit court's order and remand the case with directions as further indicated below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Meadows filed this case against Erps in November of 2013. Prior to filing, Meadows and Erps had known each other for several years. Erps provided construction services to Meadows and her husband through Erps's company, Improvements Unlimited, LLC. After Meadows' husband passed away in 2006, Erps continued to do construction work for Meadows. Beginning in 2008, Meadows and Erps were involved in four transactions together in the Princeton area that give rise to the present action. For

1

purposes of this appeal, Meadows's claims involve two of those transactions with Erps: (1) claims related to the purchase of, improvements to, and sale of the Sutphin property located on Old Oakvale Road; and (2) claims related to the financing for the Twiford apartments on Lovell Avenue and Guard Drive.[1]

In her complaint, Meadows alleged that she had to take a loss on the Sutphin property that the parties jointly purchased because "Erps failed to repay her for the financing she provided to him in the amount of $35,000." She alleged that Erps's actions in acquiring financing from her were willful, deliberate, and fraudulent and that pursuant to a contract to loan Erps money, he owed her repayment. She also alleged that because of his actions, she lost the opportunity to invest her money, incurred the expense of collection, and suffered annoyance, aggravation and inconvenience.

With respect to the Twiford apartments, Meadows alleged in her complaint that after her husband died in 2006, Erps approached her about providing him financing

---

[1] The other two transactions not directly at issue in this appeal are (1) various home improvements made by Erps to Meadows's residence; and (2) Meadows's claims related to the purchase of and improvements to the Hatcher property, which were withdrawn during the trial in this matter. Although the parties had several dealings between them, as we explain in further detail below, this matter is complicated by the almost complete lack of record keeping by either party in this case. This lack of record keeping made it difficult for the circuit court to fully determine the exact obligations between the parties during the course of their involvement together, and has thus worked to the detriment of both parties in this action.

for the apartments.  She alleged that beginning in 2008 and ending in 2009, she provided Erps with $203,000 for those buildings, but he gave her nothing in the way of a lien or ownership interest in the property.  She contended that she paid Erps five separate checks in the amounts of $67,000, $90,000, $6,000, $10,000, and $30,000 for financing purposes.[2]

Following the completion of discovery, the circuit court conducted a bench trial on October 27, 2015.  Meadows and Erps were the only witnesses who testified at trial.  The circuit court entered an Amended Judgment Order on December 29, 2015.[3]  In its order, the circuit court made the following relevant findings of fact and conclusions of law.

---

[2] The above-noted language is the extent of what Meadows alleged in her exceedingly brief complaint against Meadows with respect to these two properties.  Despite the fact that the nature of the claims alleged in Meadows's complaint lacked factual and legal clarity, Erps answered the complaint asserting the following defenses to these claims: 1) that all claims, except a contract claim, were barred by the statute of limitations given that the contract claim is permitted for up to five years for oral contracts and ten years for written contracts after accrual, and all other claims would be subject to, and barred by, the two year statute of limitations; 2) that all claims for an interest in real estate (specifically the Twiford apartments) were barred by the statute of frauds since there was no written contract between the parties.  Thus, the case proceeded as a contract action.

[3] The Amended Judgment Order corrected certain damages calculations made by the circuit court in its initial Judgment Order entered on December 22, 2015.

Regarding the Sutphin property, the circuit court found that Erps approached Meadows about jointly buying the house from Mr. Sutphin for investment and resale. Meadows testified that she cashed a certificate of deposit in the amount of $21,375 in April of 2009, signed a contract to jointly purchase the property from Mr. Sutphin for $50,000, and gave Erps $25,000 for one-half of the down payment that same day. Meadows also alleged that she continued to pay for repairs to the house by paying Erps a total of $32,300, as itemized in Erps's March 15, 2011, statement to her. Pursuant to terms of the sales contract, a deed reflecting the conveyance of the property from Mr. Sutphin to Erps and Meadows for $50,000 was recorded on April 27, 2010. Erps testified that at the closing he presented a check dated April 21, 2010 in the amount of $25,000, which he testified came from his company. However, the circuit court found that Erps failed to produce the $25,000 check at trial, and instead found Meadows's testimony credible that the $25,000 down payment came from her cashing the $21,375 certificate of deposit.

The circuit court further found that on August 10, 2010, a deed was prepared conveying Meadows' undivided interest in the Sutphin property to Erps and his wife for $35,000. Erps paid Meadows $35,000 for her interest in the property from the proceeds of a loan he secured from First Community Bank in the amount of $90,000, using the property as collateral. Erps subsequently entered into a sales contract with Mr. Shorter, agreeing to sell him the property for $90,000. The circuit court found that

4

Meadows had invested a total of $53,675 in the Sutphin property ($21,375 from cashing the certificate of deposit, plus $32,300 in payment for improvements as evidenced by Erps's March 15, 2011 statement to her), but she only recovered $35,000. The court concluded that Meadows should have recovered at least the amount of her investment. Accordingly, the court's judgment order awarded Meadows $18,675 with respect to the Sutphin property.

In regard to the Twiford apartments, the circuit court found that there was no written contract between the parties whereby Meadows would contribute funds for the apartments and jointly own them with Erps. The court further found that, even if there had been evidence of an oral contract for the joint purchase of the apartments, such a contract would be in violation of the statute of frauds, and therefore, would be unenforceable.

Contrary to Meadows's allegation that she provided financing to Erps in the form of five checks totaling $203,000 (in the amounts of $67,000, $90,000, $6,000, $10,000 and $30,000), the circuit court found that Meadows only produced two checks at trial that arguably could be attributed to the apartments – one for $67,000 and one for $90,000. The court found that the $67,000 check, which was tendered in July 2009, was attributable to the apartments based on Meadows's testimony and the notation "APT." written on the check's memorandum line. As for the $90,000 check, which was dated

5

June 15, 2009, the court found that the copy of the check that was admitted into evidence had nothing written on it to indicate that it was related to the apartments, but the copy of the same check that was produced to Erps in discovery contained the words, "Apt. property" on the memorandum line. Meadows conceded in her testimony that she wrote the words "Apt. property" on the check after it was tendered to Erps, processed through the bank, and returned to her. Accordingly, the circuit court found that the preponderance of the evidence was that Meadows lent Erps only $67,000 for his use toward the apartments; thus, she was a lender of $67,000, at no interest, and not a joint venturer with Erps for the apartments.

The circuit court granted judgment in favor of Meadows for a total sum of $85,675 ($18,675 for the Sutphin property and $67,000 for the Twiford apartments) with post-judgment interest. The court further granted Meadows pre-judgment interest from the year 2010 through the entry date of the order. Both parties assign error to the circuit court's rulings.

## II. STANDARD OF REVIEW

Regarding our standard of review following a bench trial, we have held:

> "In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly

6

erroneous standard. Questions of law are subject to a *de novo* review." Syl. Pt. 1, *Public Citizen, Inc. v. First Natl. Bank in Fairmont*, 198 W.Va. 329, 480 S.E.2d 538 (1996).

Syl. Pt. 1, *McConaha v. Rust*, 219 W. Va. 112, 632 S.E.2d 52 (2006).

# III. DISCUSSION

## A. *Sutphin Property*

In his first assignment of error, Erps contends that the circuit court made a clearly erroneous finding of fact that he did not produce a check at trial in the amount of $25,000, representing his company's payment of the balance owed for the Sutphin property at closing. According to Erps, that check was introduced as evidence as "Defendant's Exhibit #7" during the trial. The Amended Judgment Order provides:

> 10. Pursuant to the Sales Contract with Sutphin, on April 27, 2010, a Deed from Sutphin to Erps and Meadows was recorded for a consideration of $50,000. At the closing, Erps provided a check for $25,000 and stated that the funds for the payment came from his company.[2] Meadows claims the funds came from her in the form of cash ($21,375 of which came from the aforementioned C.D.). The Court finds credible Meadows' claim that this money was given to Erps to close the Sutphin house.
>
> [2] However, no such check was produced by Erps.

Erps claims that the likely reason for the mistake was that the court reporter (1) failed to list all fifteen of the defendant's exhibits on the listing sheet; (2) erroneously identified "Defendant's Exhibit #7" as "Invoice 2412" instead of a check, and (3) did not file Defendant's Exhibits 7-15. He asserts that when the court ruled, it did not have the

7

trial transcript before it, and it therefore believed the check was not produced. Meadows's response brief does not address Erps's allegation on this point. Upon review of the record before us, we conclude that the circuit court's finding on this fact was erroneous, as the trial transcript reflects that Erps submitted a $25,000 check as "Defendant's Exhibit #7" at trial.

The sales contract between Sutphin, Meadows and Erps provided an advance of $25,000 for improvements in April, 2009, but the balance of $25,000 of the total consideration of $50,000 was not to be paid until April 22, 2010. The trial testimony of Erps was as follows:

> MR. VENERI: It's already pre-marked. I'm handing you Defense Exhibit 7.
>
> MR. ERPS: Yes.
>
> MR. VENERI: We'll see that on April 21, 2010, there's a check from Improvements Unlimited, LLC, to Robert Sutphin, for how much?
>
> MR. ERPS: $25,000
>
> MR. VENERI: And, that was from your company's account?
>
> MR. ERPS: That's correct.
>
> MR. VENERI: And that was for the other $25,000 for Sutphin. Right?
>
> MR. ERPS: That's correct.
>
> MR. VENERI: So, at closing, you paid that $25,000.

MR. ERPS: I did.

MR. VENERI: And, Ms. Meadows did not.

MR. ERPS: She did not pay it.

MR. VENERI: So, if you paid the $25,000, she did not sustain a loss on this property. Did she?

MR. ERPS: She did not.

MR. VENERI: She made $2,700. Correct?

MR. ERPS: That's correct.

MR. VENERI: I move for the introduction of Exhibit 7, Your Honor, D-7.

THE COURT: Any objection?

MR. WINFREY: No, sir.

THE COURT: Alright. It will be admitted.

While the reporter's "Defendant's Exhibit List" recited that "Defendant's Exhibit #7" was "Invoice # 2412, Improvements Unlimited, LLC," the trial transcript reflects that this invoice was actually introduced as "Defendant's Exhibit #15" at trial. As Erps contends, the court reporter placed a "7" on Defendant's Exhibit 15 which mismarked the exhibit. This discrepancy would explain why the circuit court found that the $25,000 check was not produced. The docket sheet reflects that at the time the circuit court ruled, the trial transcript had not yet been filed by the court reporter. Thus, if the court reporter and the clerk only reflected and filed seven exhibits introduced by Erps (none of which included the $25,000 check), the circuit court made its ruling assuming

9

the check was not produced. The docket sheet confirms that only seven of the fifteen exhibits that were introduced by Erps and admitted into evidence at trial were timestamped for November 2, 2015 and placed in the clerk's file. For these reasons, which are not controverted on appeal by Meadows, we conclude that the circuit court's finding that the check was not produced was clearly erroneous.

Erps next alleges that because of the circuit court's erroneous finding regarding the submission of his $25,000 check, it also made a clearly erroneous finding of fact that Meadows invested $53,675 in the Sutphin property instead of $32,300. Meadows claimed that she provided the $25,000 at closing based on her testimony that she cashed a certificate of deposit in the amount of $21,375. However, neither a certificate of deposit nor a check totaling $21,375 were introduced into evidence at trial. The only evidence that was close to this amount was a cashier's check in the amount of $21,475.73 that was payable to Meadows from her bank, but this check was issued on April 22, 2009, one year before the closing on the Sutphin property. Erps asserts that the terms of the sales contract for the Sutphin property provided for a down payment of $25,000 to be made "which consists of necessary repairs being made to the house, with the balance of $25,000 to be paid in full by April 22, 2010," a year later. Thus, he contends that because the first $25,000 of the consideration paid was only in the form of repairs to the residence and was not actual money paid to Mr. Sutphin, it is therefore logical to conclude that Meadows would cash the $21,475.73 check dated April 22, 2009

10

to use for the repairs needed then, rather than for a year later when the remaining balance was paid to close the property. Erps does not dispute that Meadows paid for repairs to the property totaling $32,300, even though there are no checks in the record actually substantiating her payment to him. He claims that if it is true that Meadows contributed $25,000, it was a portion of the total amount of $32,300 that she paid him, not in addition to it. Erps notes that the complaint only alleges that Meadows invested approximately $35,000 in the Sutphin property and that the complaint was never amended.

Conversely, Meadows contends that although Erps produced a $25,000 check written from his company and thus proved that the sum of $25,000 was provided at closing, Erps did not conclusively prove where the funding for the $25,000 check actually came from. She asserts that the circuit court's order essentially found her version of events more credible, as it concluded that Meadows cashed a $21,375 certificate of deposit in addition to paying $32,300 for the repairs to the property, as evidenced by a March 15, 2011 statement outlining the repairs that Erps made to the Sutphin property admitted into evidence at trial.

We conclude that Meadows never proved she invested more than $32,300 in the Sutphin property. Because the record contains a $25,000 check dated April 21, 2010, from Erps to Mr. Sutphin which was presented at the closing on the Sutphin property, and there are no checks in the record other than the $21,475.73 cashier's check

11

dated April 22, 2009 that substantiate any actual payments made by Meadows for the improvements to the property (only Erps's acknowledgement on the record that Meadows paid a total of $32,300 in repairs, per the March 15, 2011 statement), the evidence does not support the circuit court's finding that Meadows invested $53,675 in the Sutphin property. Following her cross examination, even Meadows could not testify that she had invested any more than $32,300 in the Sutphin property, as reflect in her testimony under redirect examination by her counsel at trial:

> "Q. Is it your testimony today - - how much money did you contribute to the Sutphin property in cash, repairs, whatever else? How much money did you contribute to the Sutphin property; was it $32,300 or $57,300?
>
> A. I don't recall."

The above testimony was elicited after Meadows confirmed during cross examination that she never produced any checks to support her claims that she invested more than $32,300 in the property. Because we find that the circuit court's award of judgment of $18,675 to Meadows was an abuse of discretion, this portion of the judgment is reversed and vacated.

Turning to Meadows's cross-assignment of error, she alleges that the circuit court's judgment of $85,675 was inadequate because she and Erps were engaged in a joint venture and thus, she and Erps should have divided the remaining balance of the

$90,000 sale price once he agreed to sell the Sutphin property to Mr. Shorter.[4]  However, Meadows did not make this claim below.  The complaint does not mention a joint venture.  Rather, it merely states that Meadows had to take a loss on the Sutphin property because of "providing financing to the Defendant of approximately $35,000.00 and not being repaid."

Additionally, there is no evidence in the record that the parties agreed to split any profits made on the sale of the Sutphin property.  To the contrary, the record reveals that on August 9, 2010 (prior to the date that Erps' entered into a sales contract with Mr. Shorter), Meadows voluntarily sold her interest in the Sutphin property to Erps for $35,000.  At trial, Meadows admitted that she accepted $35,000 from Erps for her interest in the property, knowing what she had invested.

> Q. This was - - that deed was in April. In August, there's a deed from you to Mr. and Mrs. Erps conveying your interest in the property for $35,000. Tell the judge how that deed came about, please.

---

[4] This Court has defined a joint venture as follows:

> A joint venture or, as it is sometimes referred to, a joint adventure, is an association of two or more persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill, and knowledge. It arises out of a contractual relationship between the parties. The contract may be oral or written, express or implied.

Syl. Pt. 2, *Price v. Halstead*, 177 W. Va. 592, 355 S.E.2d 380 (1987).

13

A. When he bought the property?

Q. Yes, ma'am. Tell me how and why you sold the property, your interest in the property to them for $35,000.

A. Well, he said that's what it would amount to, that's what he would pay me, so I accepted it.

Q. At that time did you know how much money you had in the property?

A. Yes, I did, but I figured this was all I was going to get.

Because Meadows had the right to decline Erps's offer to buy her interest in the Sutphin property and demand a higher price, we conclude that she is estopped from making this argument, as it has been waived by her conduct. *See* Syl. Pt. 2, in part, *Parsons v. Halliburton Energy Services, Inc.,* 237 W.Va. 138785 S.E.2d 844 (2016) ("The common-law doctrine of waiver focuses on the conduct of the party against whom waiver is sought, and requires that party to have intentionally relinquished a known right. A waiver may be express or may be inferred from actions or conduct, but all of the attendant facts, taken together, must amount to an intentional relinquishment of a known right. . . ".) Meadows voluntarily invested $32,300 in the property, and voluntarily sold her interest in the property to Erps for the sum of $35,000, being fully aware of what she had invested. Accordingly, we find that Meadows's cross-assignment of error has no merit.

14

**B.      Twiford Apartments**

Meadows alleged in her complaint that she provided Erps over $200,000 in financing for the Twiford apartments in the form of checks in the amounts of $67,000, $90,000, $6,000, $10,000, and $30,000.  Contrary to Meadows's allegation, however, the circuit court found that the $67,000 check, which was tendered in July 2009, was the only check attributable to the apartments based upon her testimony and the evidence adduced at trial.  Accordingly, the circuit court found that the preponderance of the evidence was that Meadows lent Erps only $67,000 for his use toward the apartments.

On appeal, Erps states that he owes Meadows $30,000 for a loan regarding the apartments.  However, he disputes that he owes her $67,000 as awarded by the circuit court.  Erps contends that while the $67,000 check produced by Meadows had the notation "APT." written on the memorandum line, that single check achieved two purposes: it provided a $30,000 loan to Erps for the apartments, and it paid an invoice dated June 29, 2009 for the improvements Erps made to Meadows' residence in the amount of $32,080.90.[5]  He asserts that it is not possible, and the record does not support, that the $67,000 check was paid exclusively for the apartment loan.

---

[5] The parties agree, and the circuit court found, that Erps did substantial work to Meadows' residence.  Although Erps' testified that he believed the repairs totaled at least $70,000.00, the court found that Erps had no records to substantiate the total amount that he was claiming other than his June 29, 2009 invoice for $32,080.90.  The court also acknowledged that Meadows made various payments to Erps for the repairs to her home, (continued . . .)

15

Upon review of the record, we conclude that the circuit court's award of $67,000 was an abuse of discretion, as it not fully supported by the evidence presented by the parties. At trial, Meadows's Exhibit #15, a handwritten summary of the improvements made to her home, was admitted into evidence. The document contained the heading, "House." In the upper left hand corner of the summary, Meadows wrote "$32,080.00 Pd. – Paid". In the upper right hand corner, she wrote "30,000.00 Pd. - Appts." During her testimony, Meadows testified that she wrote the summary both (1) after the improvements and repairs were made to her home and (2) after Erps tendered the June 29, 2009 invoice for the home improvements to her. Her testimony is consistent with her notation in the upper left corner of her summary which states that she paid

but concluded that both parties were unclear about the work done on the house and exactly when it began. Noting its concern with the parties' poor record keeping, the circuit court stated:

> It's hard for the Court to determine which of the checks submitted by Plaintiff to the Defendant in this case were for payment of repairs to her house or for investment purposes; nevertheless, the plaintiff has the burden of proving that she is entitled to reimbursement for investment sums. The matter is further complicated by the almost complete lack of record keeping from each of the parties in this case.
> . . .
> This lack of record keeping has worked to the detriment of both parties in this action, since it makes it difficult for the Court to determine the exact obligations between the parties during the course of their involvement together.

"$32,080.00" for the repairs, as this figure is essentially the same amount as Erps' June 29, 2009 invoice for the work performed on her home totaling $32,080.90.

The record further reflects that the only amount Meadows paid to Erps after she received the June 29, 2009 invoice for repairs to her home was $67,000 check tendered to Erps on July 29, 2009.[6] The invoice for the "House" improvements and repairs was not due to be paid until July 14, 2009, and the $67,000 check was tendered just fifteen days later. Because Meadows owed Erps $32,080.90 for the improvements and repairs to her home per the June 29, 2009, invoice, and the only check that she wrote following receipt of that invoice was the $67,000 check, we conclude that the $32,080 "House" improvements that she wrote on her summary had to have been paid with the $67,000 check. There is no other payment from Meadows to Erps in the record which would satisfy the amount due on the June 29, 2009 invoice. While Meadows contends that the $30,000 reference in her handwritten summary was for a separate loan that she made to Erps for a gate and appliances, she failed to produce a check proving payment of this specific amount.

---

[6] With respect to the date on Meadows' $67,000.00 check, her complaint states that although it was dated July 29, 2007, it cleared the bank in July of 2009. Because the record establishes that the parties did not commence any of the four transactions between them until sometime in 2008, and because Meadows' complaint suggests that the date on the check was incorrect, we assume that Meadows misdated the check for 2007 instead of 2009. The circuit court's order states that the check was "tendered on July 29, 2009."

17

In awarding Meadows $67,000, the circuit court simply concluded that because the check contained the notation "APT." at the time that it was tendered to the bank, Meadows had established by a preponderance of the evidence that it was a loan for the apartments. However, the circuit court failed to evaluate and weigh the remaining evidence placed before it in the record. Specifically, the circuit court did not make any finding that specifically addresses Meadows's notations on her handwritten summary. Additionally, the circuit court never addressed the fact that the only check written by Meadows to Erps after she received the invoice for the repairs to her home was the $67,000 check. While we are mindful of the deference that a trial court's judgment is generally accorded, this Court has held that

> [w]hen the finding of a trial court in a case tried by it in lieu of a jury is against the preponderance of the evidence, is not supported by the evidence, or is plainly wrong, such finding will be reversed and set aside by this Court upon appellate review.' Point 4, Syllabus, *Smith v. Godby*, 154 W. Va. 190, 174 S. E.2d 165 (1970).

Syl. Pt. 5, *In re Boso*, 160 W. Va. 38, 231 S. E.2d 715 (1977). Because the evidence adduced at trial reveals that Meadows' summary was written after she paid for the improvements to her residence totaling $32,080.90 with the $67,000 check, we conclude that the clear weight and preponderance of the evidence supports that her loan for the apartments only totaled $30,000, as this is the amount she indicated she paid for financing the apartments on her summary. Accordingly, we reduce the circuit court's award of judgment on the Twiford apartments to $30,000.

18

Lastly, with respect to Meadows' cross-assignment of error alleging that the circuit court erred by disregarding her $90,000 check to Erps as a loan for the apartments, we conclude that this argument has no merit. Erps contended that the $90,000 check dated June 15, 2009 covered Meadows's payments for various improvements to the Hatcher property, her residence, and the Sutphin property. It is undisputed that Meadows added the notation "Apt property" on the memorandum line of the $90,000 check after the check had cleared the bank, but before she gave the check to her attorney to produce in discovery as one of the checks paid for the properties at issue in the complaint. Accordingly, the circuit court properly disregarded the check once it determined that there was nothing written on the memorandum line of the check when it was tendered to Erps and processed through the bank. For these reasons, we conclude Meadows failed to prove by a preponderance of the evidence that the $90,000 check was a loan for the Twiford apartments and we affirm the circuit court's finding on this issue.

## IV. CONCLUSION

For the foregoing reasons, the December 29, 2015 Amended Judgment Order of the Circuit Court of Mercer County is affirmed in part, reversed in part, and remanded with directions to vacate the judgment for Meadows on the Sutphin property, and enter judgment for Meadows on the Twiford apartments in the amount of $30,000, plus interest.

Affirmed, in part; Reversed, in part; and Remanded with Instructions.